IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BOCK,<br>on behalf of Plaintiff and the class<br>members described herein, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case No. 1:22-cv-01758 |
| WLCC LENDING FDL d/b/a<br>FIRST DAY LOANS;<br>WAKPAMNI LAKE COMMUNITY<br>CORPORATION;<br>WAKPAMNI LAKE COMMUNITY<br>CORPORATION II d/b/a WLCC II;<br>GENEVA LONE HILL;<br>BRETT A. CRANDALL III;<br>RAYCEN RAINES, III, also known as<br>RAYCEN AMERICAN HORSE RAINES<br>and formerly known as RAYCEN<br>BALLARD; and JOHN DOES 1-20; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**COMPLAINT – CLASS ACTION**

1. Plaintiff, Michael Bock, brings this action against Defendants (a) WLCC Lending FDL d/b/a First Day Loans; (b) Wakpamni Lake Community Corporation; (c) Wakpamni Lake Community Corporation II d/b/a WLCC II; (d) Geneva Lone Hill; (e) Brett A. Crandall III; (f) Raycen Raines, III, also known as Raycen American Horse Raines and formerly known as Raycen Ballard; and (g) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Illinois residents.

2. Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq. (Count III – the Predatory Loan Prevention Act provides that violations are a violation of

-1-

the Illinois Consumer Fraud Act), and treble damages under RICO (Count IV).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. §1331, 18 U.S.C. §1964, 28 U.S.C. §1337, and 28 U.S.C. §1367. Jurisdiction may also exist under 28 U.S.C. §1332(d), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

4. This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5. Venue is proper because acts to collect the loans impacted Plaintiff in the Northern District of Illinois.

6. As set forth below, Defendants operate interactive websites through which they sought to and did make loans to Illinois residents. The use of an interactive website which permits Illinois residents (but not residents of specified other states) to apply for loans, along with the making and collecting of loans within the state, establishes a purposeful availment of Illinois and is sufficient to establish personal jurisdiction over the defendants responsible for the site. *Toys "R" Us, Inc., v. Step Two*, 318 F.3d 446, 454 (3rd Cir. 2003).

## PARTIES

7. Plaintiff Michael Bock is a natural person who at all times relevant has resided in Sugar Grove, Illinois.

8. Defendant Wakpamni Lake Community Corporation ("WLCC") is a corporation organized under the law of the Oglala Tribe.

9. Defendant Wakpamni Lake Community Corporation II ("WLCC II") is a corporation organized under the law of the Oglala Tribe.

10. Defendant Geneva Lone Hill ("Hill") is a citizen of South Dakota believed to reside at 453 Batesland Housing, Batesland, SD 57716. On information and belief, Hill is president of the

Wakpamni Lake Community Corporation ("WLCC").

11. Defendant Raycen Raines, III, also known as Raycen American Horse Raines and formerly known as Raycen Ballard ("Raines"), is a citizen of South Dakota believed to reside at 3503 or 3505 Chapel Hill Road, Rapid City, SD 57702. On information and belief, he is a board member and Chief Executive Officer of WLCC.

12. On information and belief, Raines has taken a lead role in originating the Internet lending business complained of herein, and in organizing WLCC and WLCC II and acquiring capital for lending.

13. Defendant Bret A. Crandall ("Crandall") is an individual believed to be a citizen of Maryland and to reside at 1707 Randall Dr., Solon, IA 52333-9424, or 1413 Foxwood Court, Annapolis, MD 21409. On information and belief, he is employed by WLCC as director of compliance.

14. John Does 1-20 are other natural or artificial persons who participated in the Internet lending scheme complained of herein.

## FACTS RELATING TO INTERNET LENDING BUSINESS

15. Raines, Hill and others developed a plan to make illegal high-interest loans over the Internet, while evading liability for such loans by using the tribal immunity of the Oglala Sioux tribe.

16. Raines and Hill initially asked the Economic Development Office of the Oglala Sioux Tribe to enter into a business arrangement for the conduct of a high-interest consumer lending business.

17. The Economic Development Office declined to enter into any such business arrangement.

18. Raines and Hill thereupon formed WLCC and later WLCC II.

19. While these purport to be tribal entities, they are in fact operating contrary to the wishes of tribal authorities.

20. The actual lending operations were carried out and continue to be carried out in

locations other than tribal lands.

21. All customer payments were processed through Cash Cloud, LLC, a now-defunct Arizona entity with no tribal affiliation, and then Cash Cloud, Inc., an Arizona corporation.

22. Other locations used to conduct the lending operations are in Utah, Texas, Canada and Belize. For example, demands on wage assignments have purported to come from 215 East Center Street, Blanding, Utah.

23. The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

24. No member of the Tribe participates in the day to day lending operations.

25. Raines and Hill made Crandall director of compliance for WLCC. Crandall devised and implemented the lending practices engaged in by WLCC and WLCC II.

26. WLCC and WLCC II formed and conducted a series of lending operations that were either subsidiaries or assumed names, and which change from time to time. These included:

    a. WLCC II d/b/a Arrowhead Advance.

    b. WLCC Lending FDL d/b/a Fast Day Loans.

    c. WLCC Lending BGL d/b/a Bison Green Lending.

    d. WLCC Lending JEM d/b/a Explore Credit.

    e. WLCC Lending FHC, d/b/a Fox Hills Cash.

    f. WLCC Lending AIL d/b/a Good Loans Fast.

    g. WLCC Lending TLP d/b/a Rapid Loan.

    h. Black Hawk Financial d/b/a Title Loan Fast.

    i. WLCC Lending MSS d/b/a MyBackWallet.

    j. WLCC Lending GEG d/b/a TheGanEdenGroup.com;

    k. Checkadvanceusa.net;

    l. WLCC Lending CFC d/b/a Consumer First Credit;

    m. Green Circle Lending;

    n.    Rolling Plains Cash;

    o.    Cash on Cloud 9;

    p.    Easy Cash Online Store;

    q.    BaysideCash.com;

    r.    Whisper Rock, LLC;

    s.    BeachsideCash.com;

    t.    Blvdcash.com;

    u.    Fast Money Store;

    v.    FiresideCash.com;

    w.    Seaside Dollar;

    x.    SeasidePayday.com;

    y.    WLCC Lending MFT d/b/a Merit Financial Trust;

    z.    WLCC Lending MFT d/b/a Ocean Park Funding;

27. Each of these entities claims that it is "an entity of the Wakpamni Lake Community Corporation (WLCC), a tribal corporation wholly owned by the Wakpamni Lake Community." WLCC claims to be entitled to the sovereign immunity of the Oglala Sioux Tribe. (Exhibit B)

28. In fact, the Oglala Tribe receives no benefit from the lending operations.

29. WLCC and WLCC II receive a small fee for each loan made.

30. All profits from the lending activities are received by non-members of the Tribe.

31. The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

32. Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

**SOVEREIGN IMMUNITY AS A DEFENSE**
**TO STATE USURY LAWS AND "RENT-A-TRIBE SCHEMES"**

33. An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

34. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

35. An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

36. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

37. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

38. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe

...

scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

39. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## DEFENDANTS' LOANS

40. WLCC III d/b/a Arrowhead Advance makes loans through its website, www.arrowheadadvance.com, to consumers at interest rates in excess of 600% annually. (Exhibit A)

41. On or about November 24, 2021, WLCC III d/b/a Arrowhead Advance made a loan to Plaintiff (Exhibit A) for $1,050. The loan would result in repayment of $4,895.98 if paid twice-monthly for eight months. The total interest charged would be $3,845.98, which according to WLCC III d/b/a Arrowhead Advance equates to an annual percentage rate of 667.52%.

42. The loan agreement (Exhibit A) is a standard form.

43. The loan was made for personal purposes and not for business purposes.

44. The principal amount was transferred to Plaintiff's bank account in Illinois via ACH.

45. The loan was made entirely via Internet.

46. The loan was to be repaid via ACH.

47. Plaintiff made seven of the payments, including interest.

48. Defendants' lending does not actually occur on the Tribe's reservation.

49. A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

50. The place where a consumer is located when he or she submits an application via an

online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

51. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 et seq. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

52. Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

53. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

54. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null

and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

55. Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

56. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

57. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

58. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC*, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133 (https://www.idfpr.com/dfi/

CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20Desist%20Order%20Bob%208%2016%202017.pdf)

## COUNT I - DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

59. Plaintiff incorporates paragraphs 1-58.

60. This claim is against all Defendants.

61. There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff must repay the outstanding loans made to them (Exhibit A, in Plaintiff's case).

62. Declaratory relief will resolve such controversy.

63. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

64. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

65. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC II d/b/a Arrowhead Advance at more than 9% interest (c) which loan has not been paid in full.

66. Plaintiff may alter the class definition to conform to developments in the case and discovery.

67. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

68. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and

attempting to collect illegal loans.

69. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

70. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

71. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

72. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Injunctive relief;

    ii. Declaratory relief;

    iii. Restitution of all amounts collected on the loans from members of the class;

    iv. Costs of suit; and

    v. Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

73. Plaintiff incorporates paragraphs 1-58.

74. This claim is against all Defendants.

75. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

76. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

77. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

78. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC II d/b/a Arrowhead Advance at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

79. Plaintiff may alter the class definition to conform to developments in the case and discovery.

80. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

81. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

82. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

83. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

84. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Damages as provided in 815 ILCS 205/6.

   ii. Attorney's fees, litigation expenses and costs of suit; and

        iii.        Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

85.        Plaintiff incorporates paragraphs 1-58.

86.        This claim is against all Defendants.

87.        Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

88.        Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

## CLASS ALLEGATIONS

89.        Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

90.        The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC II d/b/a Arrowhead Advance at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

91.        Plaintiff may alter the class definition to conform to developments in the case and discovery.

92.        The class is so numerous that joinder of all members is not practicable.  On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

93.        There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

94.        Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

95. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

96. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Compensatory damages;

   ii. Punitive damages;

   iii. Attorney's fees, litigation expenses and costs of suit; and

   iv. Such other and further relief as the Court deems proper.

## COUNT IV – RICO

97. Plaintiff incorporates paragraphs 1-58.

98. This claim is against Hill, Crandall and Raines, who are the RICO "persons."

99. All loans made in the name of WLCC II d/b/a Arrowhead Advance to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

100. The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

101. WLCC II d/b/a Arrowhead Advance is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

102. Defendants Hill, Crandall and Raines are associated with this enterprise, in that they direct the making of loans by WLCC II d/b/a Arrowhead Advance.

103. Defendants Hill, Crandall and Raines conducted or participated in the conduct of

the affairs of WLCC II d/b/a Arrowhead Advance through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

104. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

105. Plaintiff brings this claim on behalf of a class.

106. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of WLCC II d/b/a Arrowhead Advance at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

107. Plaintiff may alter the class definition to conform to developments in the case and discovery.

108. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

109. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether WLCC II d/b/a Arrowhead Advance is an "enterprise."

    c. Whether Defendants Hill, Crandall and Raines are each associated with WLCC II d/b/a Arrowhead Advance.

    d. Whether Defendants Hill, Crandall and Raines each conducted or participated in the affairs of WLCC II d/b/a Arrowhead Advance through a pattern of making and collecting unlawful loans.

110. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

111. Plaintiff's claims are typical of the claims of the class members. All are based on the

same factual and legal theories.

    112.    A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.    Individual actions are not economically feasible.

        b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.    Treble damages;

        ii.    Attorney's fees, litigation expenses and costs of suit; and

        iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

> */s/ Daniel A. Edelman*
> Daniel A. Edelman

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

      Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

      */s/ Daniel A. Edelman*
      Daniel A. Edelman